UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS RYAN DUVALL,<br><br>Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | Case No. 1:18-cv-00080-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is the unopposed Motion for Summary Judgment filed by Defendants Aaron Pryor, Tyler Nicodemus, and William Ybanez (Dkt. 28).[1] Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented, and oral argument is unnecessary. *See* Loc. Civ. R. 7.1(d)(2)(ii). For the reasons explained below, the Court will grant the motion for summary judgment in part and deny it in part.

---

[1] The additional defendants named in this action were previously dismissed (Dkt. 8).

# BACKGROUND

Plaintiff, Dennis Ryan Duvall, is an inmate housed by the Idaho Department of Corrections at the Idaho State Correctional Center ("ISCC"). On January 1, 2017, Nicodemus and Ybanez were security staff supervisors in tier D1, and Duvall was housed in Cell 107 on tier D1.

On January 1, 2017, inmate Gary Layman was transferred to Cell 107, to be housed with Duvall. [2] At that time, there was no history of conflict between Duvall and Layman and no security concerns suggesting that they should not be housed together. Defendant Nicodemus was called down to Cell 107 after Layman said he could not live with Duvall. Layman asked to instead be placed in a cell upstairs on the same tier. According to Nicodemus, Layman did not say he was a threat to Duvall or that he had any intention of harming Duvall. However, Duvall presented evidence and testified that he heard Layman say to the correctional officer, "I can't live with this guy, because he's a thief and a sex offender," and "if you move me into this cell, something bad will happen to him." (*Pl. Dep.*, Dkt. 30-1 at 6-7.)

---

[2] There is a dispute of fact as to the timing of when Layman was transferred to Cell 107 and how long he was placed in the cell. Defendants have presented evidence that Layman was placed in the cell on December 28, 2016, and refused to continue living with Duvall on December 30, 2016. Duvall has presented evidence, and testified in his deposition, that Layman was transferred to Cell 107 on January 1, 2017, and immediately refused that placement because Duvall was a sex offender. The Court assumes, for purposes of summary judgment, that Duvall's version is correct.

Nicodemus declined to allow Layman his requested placement in an upstairs cell on the same tier and instead offered to place Layman on a different tier. Layman refused to go to the other tier. Nicodemus thus issued a disciplinary offense report ("DOR") to Layman and Layman was taken to disciplinary segregation. The DOR states as a description of the offense: "Offender Layman #8846 stated that he could not live with his cell mate because of his crime. Layman was removed from the tier. Layman was given an opportunity to move to another tier and he refused." (Dkt. 28-6.) The DOR offense is listed as "Disobedience to Orders 2." The DOR does not mention Duvall's name or the threat Layman made regarding Duvall. (*Id.*)

On January 11, 2017, Defendant Pryor, the sergeant of the segregation unit where Layman was housed, made the decision to move Layman from segregation to Cell 107 on tier D1, which was where Duvall was still housed. Pryor reviewed the information available to him, including the DOR issued to Layman. Pryor did not see any concerns about safety to Duvall in that DOR, and did not see any other concern forms, grievances or other documentation suggesting that Layman posed a safety risk to Duvall. Pryor did not know that Layman told Nicodemus that Layman could not live with Duvall because Duvall was a sex offender, and Pryor had no knowledge of who Duvall was. Pryor spoke with Layman before moving him to tier D1 and confirmed with Layman that Layman was okay to be moved to

that tier. Layman told Pryor that it was okay. Neither Pryor nor Layman mentioned Duvall nor Cell 107.

Layman was placed in Cell 107 with Duvall mid-morning on January 11, 2017. Before placing Layman in the cell with Duvall, a correctional officer spoke with both Duvall and Layman to assess whether there was a risk of housing them together. Layman told the officer that he was "okay" living with Duvall and that he did not want to return to segregation. Duvall admits that the correctional officer also asked him if he was okay with Layman living with him, and that he (Duvall) said yes, it was okay.

Thus, when Layman was placed into Duvall's cell on January 11, 2017, both Layman and Duvall had informed the correctional officer that they were okay to live together. Plaintiff admits that based on this information, the correctional officer that placed him into the cell would not have known that Layman posed a risk of threat to Duvall's safety. (*Pl. Dep.*, Dkt. 30-1 at 13.) Duvall points out, however, that if there had been a red flag, or safety alert, placed in his and Layman's files, this would have alerted the correctional officers that Layman was a threat to Duvall. (Dkt. 30-1 at 13.)

After confirming with both Layman and Duvall that they were okay to live together, the correctional officer placed Layman with Duvall in Cell 107. Around

that time, or sometime after that,[3] Defendant Ybanez, who had been told that Layman might ask for a move, came by Cell 107. Ybanez spoke with Layman, and Layman informed Ybanez that he wanted to move out of the cell but wanted to do it the "right way." (*Ybanez Decl.*, Dkt. 28-7 at 2.) Ybanez told Layman the proper way was to submit a concern form and that Ybanez would make sure it was turned in. Ybanez asked Layman if he was okay to stay in the cell until he could be moved and Layman told Ybanez, "Yes." Layman did not state to Ybanez, or otherwise indicate to Ybanez, that he intended to assault or harm Duvall.

Ybanez left Cell 107 and went about five paces when he heard shouting coming from the cell. Ybanez came back immediately and saw Layman hit Duvall two times. As soon as Layman saw Ybanez, he stopped hitting Duvall. Ybanez had the door to Cell 107 opened and Layman was put into handcuffs and taken out of the cell. Duvall was taken to medical. (Dkt. 28-8.)

According to Duvall, he was laying on his bunk when Layman attacked him, hitting him in the face and injuring him. Duvall did not fight back.

---

[3] Duvall presented evidence and testified that Layman was in the cell for somewhere between 30 seconds and 15 minutes but admitted during his deposition that it was possible that Layman was in the cell with him for 4 hours. (*Pl. Dep.*, Dkt. 30-1 at 17, 19.)

Duvall filed the present action on February 16, 2018, alleging that

Defendants Nicodemus, Pryor, and Ybanez violated the Eighth Amendment by

failing to protect him from the attack by Layman. On May 1, 2020, Defendants

filed a Motion for Summary Judgment (Dkt. 20), which is before the Court for

decision. Duvall has not filed an opposition to the motion.[4]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to summary judgment as a

matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not

"to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436,

441 (9th Cir. 2017) (citation omitted). In considering a motion for summary

judgment, this Court must "view[ ] the facts in the non-moving party's favor." *Id*.

To defeat a motion for summary judgment, the respondent need only present

evidence upon which "a reasonable juror drawing all inferences in favor of the

respondent could return a verdict in [his or her] favor." *Id*. Accordingly, this Court

must enter summary judgment if a party "fails to make a showing sufficient to

---

[4] Duvall was provided notice of his rights and obligations regarding the motion for summary judgment (Dkt. 29).

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is not enough for the non-moving party to rest on mere allegations or denials in his or her pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). However, the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). Further, a verified complaint based on personal knowledge setting forth specific facts admissible in evidence is treated as an opposing affidavit under Federal Rules of Civil Procedure 56. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Accordingly, in connection with the Motion for Summary Judgment, this court considers specific facts set forth in the complaint, which was sworn to under penalty of perjury, as evidence to the extent such facts appear to be based on the plaintiff's personal knowledge and are otherwise admissible.[5] On the other hand, a party cannot create a genuine issue of

---

[5] Defendants point out that Duvall testified at his deposition that he had assistance writing the complaint, that he did not write the complaint himself, and that he could not be sure everything in his complaint was true and correct. (*See Pl. Dep.*, Dkt. 30-1 at 22.) (Continued)

fact sufficient to survive summary judgment by contradicting his own previous sworn statement without explaining the contradiction or trying to resolve the disparity. *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999); *cf. Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (party cannot create issue of fact by affidavit contradicting prior deposition testimony).

## ANALYSIS

### 1.    Deliberate Indifference

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. A defendant violates the Eighth Amendment if he or she is deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of

---

However, Duvall also testified that to the best of his knowledge, the information in the complaint was true, that he reviewed the complaint after it was written, and that he signed it stating that it was all true. (*See id.*)

serious harm exists, and he must also draw the inference." *Id*. at 837. Prison

officials who act with deliberate indifference "to the threat of serious harm or

injury" by one prisoner against another are subject to liability under § 1983. *Berg*

*v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

Duvall contends that defendants Nicodemus, Pryor, and Ybanez were

deliberately indifferent to a substantial risk of serious harm in violation of the

Eighth Amendment when they failed to protect him from Layman. Defendants

seek summary judgment, contending that there is no dispute of material fact and

that they are entitled to summary judgment on Duvall's claim of deliberate

indifference.

### A.    Defendant Nicodemus is Not Entitled to Summary Judgment

The evidence in the record, viewed in the light most favorable to Duvall,

demonstrates that on January 1, 2017, Layman was transferred to Cell 107, in

which Duvall was housed. Layman told Nicodemus that he could not live with

Duvall because of Duvall's crime of conviction (a sex offense) and asked to

instead be placed in a cell upstairs on the same tier. According to Nicodemus,

Layman did not say he was a threat to Duvall or that he had any intention of

harming Duvall. However, Duvall has presented evidence and testified that he

heard Layman say to Nicodemus, "I can't live with this guy, because he's a thief

and a sex offender," and "if you move me into this cell, something bad will happen to him."

Thus, viewing the evidence in the light most favorable to Duvall, Nicodemus knew that Layman had threatened that if placed into the same cell with Duvall, "something bad will happen to [Duvall]." Although Nicodemus issued a DOR to Layman, Nicodemus only stated on the DOR that it was issued due to Layman's refusal to live with a cell mate. Nicodemus failed to include Duvall's name on the DOR as the cell mate Layman refused to live with, failed to note on the DOR that Layman refused to live with Duvall because Duvall was a sex offender, and, most significantly, failed to include a notation on the DOR or in Layman's file regarding the threat made by Layman that "something bad will happen to [Duvall]" if Layman had to live with him. Indeed, there is no evidence that Nicodemus took any action to protect Duvall from future harm from Layman despite actual knowledge of Layman's threat.

The Court acknowledges that there are some inconsistencies and gaps in Duvall's deposition testimony. For example, at one point, Duvall testified that he could not remember the name of the correctional officer that brought Layman to the cell on January 1. However, Duvall also testified that Nicodemus was at the cell on January 1, and that Duvall heard Layman tell Nicodemus that he (Layman) could not live with Duvall, and that "something bad will happen" to Duvall if

Layman had to live with him. Nicodemus also admits that he was called to Cell 107 when Layman said he could not live with Duvall, that he interacted with Layman regarding the placement, and that Layman said he could not live with Duvall because Duvall was a sex offender. (*See Nicodemus Decl.*, Dkt. 28-3.)

Further, the Court notes that during the deposition, Duvall indicated that he has been diagnosed with mild retardation and is slow to process things. (Pl. dec., Dkt. 30-1 at 3.) The transcript of the deposition also demonstrates that Duvall at times got confused, appeared to get flustered, and stated that he did not understand the questions. Under these circumstances, the Court does not find the inconsistencies in Duvall's testimony during the deposition to be fatal to his opposition to summary judgment.

Defendants argue that the generalized nature of the statement "something bad will happen to him," is insufficient where Duvall never reported the threat. The Court disagrees. The evidence, viewed in the light most favorable to Duvall, demonstrates that Nicodemus was actually aware of the threat by Layman that "something bad will happen to" Duvall if Layman was placed in a cell with him. Despite this knowledge of the threat, Nicodemus took no action to protect Duvall from future harm by Layman, such as putting an alert in Layman's file, or noting the threat on the DOR. This evidence is sufficient to withstand summary judgment. *See Farmer v. Brennan*, 511 U.S. at 837 (a prison official that knows of a

substantial risk of serious harm must take reasonable measures to guarantee the safety and well-being of the prisoner); *Wilk v. Neven*, 956 F.3d 1143, 1148-49 (9th Cir. 2020) ("Once an official is subjectively aware of a substantial risk of serious harm, 'clearly established' law requires 'only that the [official] take reasonable measures to mitigate the substantial risk." (citation omitted)).

The cases cited by Defendant—*Shelton v. Reinke*, No. 3:11-cv-00064-BLW, 2013 WL 1319630 (D. Idaho Mar. 28, 2013); *Chandler v. Amsberry*, No. 3:08-CV-00962-SI, 2014 WL 1323048 (D. Or. Mar. 28, 2014); and *Crofts v. Wessels*, No. 1:17-CV-00058-DCN, 2019 WL 1431225 (D. Idaho Mar. 29, 2019)—are distinguishable.

In *Shelton*, the plaintiff admitted that there had been no direct threats but claimed that there had been bullying and "veiled threats" in an attempt to get the plaintiff to move out of a cell. 2013 WL 1319630, at *8. This evidence was found to be insufficient to establish that the plaintiff was incarcerated in conditions posing a substantial risk of serious harm. *Id.*

In *Chandler*, there was again no direct threat, but instead "implied threats through hostile stares and body language and offensive comments" made to the plaintiff by other inmates, and the status of the plaintiff as a sex offender, which the plaintiff contended put him at risk of harm in the general population. 2014 WL

*1323048*, at \*7-\*8. This evidence was found to be too general and speculative and thus insufficient to establish a substantial risk of serious harm. *Id.* at \*8.

In *Crofts*, the plaintiff claimed that housing him in general population and with an inmate named Lloyd presented a substantial risk of serious harm. The plaintiff presented evidence that he had submitted an inmate concern form and grievance stating he did not get along well with members of two gangs and had asked to be moved out of the general population because members of those gangs "'keep jumping me.'" The plaintiff had also stated during a hearing that he had been threatened by Lloyd, a former member of one of the gangs, when they shared a cell for a day, but the plaintiff had refused to elaborate on the nature of that threat. 2019 WL 1431225, at \*4. This evidence was found to be insufficient to establish that housing the plaintiff in general population and with Lloyd presented a substantial risk of serious harm.

In contrast to these cases, here Duvall has presented evidence of a direct threat from Layman that if Layman was housed with Duvall, "something bad will happen to" Duvall. The Court finds this evidence sufficient to withstand summary judgment on the issue of whether there was a substantial risk of serious harm to Duvall if Layman was housed with him.

In sum, there is a genuine issue of material fact as to whether Nicodemus knew that Layman posed a substantial risk of serious harm to Duvall, and, if so,

whether Nicodemus took reasonable measures to guarantee Duvall's safety and well-being. Further, as discussed below, the Court finds that Nicodemus is not entitled to qualified immunity. The Court will accordingly deny summary judgment on Duvall's Eighth Amendment failure to protect claim against Defendant Nicodemus.

### B.    Defendant Pryor is Entitled to Summary Judgment

The undisputed evidence demonstrates that Defendant Pryor made the decision to move Layman from segregation to Cell 107, where Duvall was housed. Pryor reviewed the information available to him, including the DOR issued by Nicodemus to Layman. Pryor did not see any concerns about safety to Duvall in that DOR, and did not see any other concern forms, grievances or other documentation suggesting that Layman posed a safety risk to Duvall. Pryor did not know that Layman told Nicodemus that Layman could not live with Duvall because Duvall was a sex offender, and Pryor had no knowledge of who Duvall was. Pryor spoke with Layman before moving him to tier D1 and confirmed with Layman that Layman was okay to be moved to that tier. Layman told Pryor that it was okay. Neither Pryor nor Layman mentioned Duvall.

Viewed in the light most favorable to Duvall, the evidence fails to show that Pryor knew about the threat Layman had made regarding Duvall, or had actual knowledge of any other information indicating that Layman was a threat to Duvall.

Summary judgment in favor of Pryor is therefore appropriate. *See Farmer*, 511 U.S. at 837 (To exhibit deliberate indifference, defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Celotex*, 477 U.S. at 322 (court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### C.      Defendant Ybanez is Entitled to Summary Judgment

The undisputed evidence demonstrates that before placing Layman in Cell 107 with Duvall, both Duvall and Layman told a correctional officer that they were okay to live together, and that Layman was then placed into the cell. Around that time, or sometime after that, Layman informed Ybanez that he wanted to move out of the cell but wanted to do it the "right way." Ybanez told Layman the proper way was to submit a concern form, and asked Layman if he was okay to stay in the cell until he could be moved. Layman told Ybanez, "Yes" and did not state or otherwise indicate to Ybanez that he intended to assault or harm Duvall. Ybanez then left Cell 107 and had only gone about five paces when he heard shouting coming from the cell. He came back to the cell to find that Layman had attacked Duvall.

Viewed in the light most favorable to Duvall, the evidence fails to show that Ybanez knew about the threat Layman had made regarding Duvall or had actual knowledge of any other information indicating that Layman was a threat to Duvall. Summary judgment in favor of Ybanez is therefore appropriate. *See Farmer*, 511 U.S. at 837; *Celotex*, 477 U.S. at 322.

## 2.    Defendant Nicodemus is Not Entitled to Qualified Immunity[6]

Defendant Nicodemus argues that he is entitled to qualified immunity because "[t]here was no case law squarely on point that would have reasonably indicated to the Defendants that their conduct was unconstitutional." (*Defs.' Br.*, Dkt. 28-1 at 16.) The Court disagrees.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but

---

[6] Because Defendants Pryor and Ybanez are entitled to summary judgment based on the lack of evidence demonstrating deliberate indifference, the Court limits its discussion of qualified immunity to Defendant Nicodemus.

the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011).

To determine whether a government official is entitled to qualified immunity, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, (1) violated a statutory or constitutional right, (2) that was clearly established at the time of the challenged conduct. *Moonin v. Tice*, 868 F.3d 853, 860 (9th Cir. 2017). Courts may use their discretion in deciding which of the two prongs to analyze first. *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

As discussed above, construing the evidence in the light most favorable to Duvall, there are genuine issues of material fact as to whether Nicodemus violated Duvall's constitutional rights by being deliberately indifferent to a serious risk of harm by Layman. Thus, the only remaining question is whether this right was clearly established in late December 2016 or early January 2017, when the alleged deliberate indifference by Nicodemus occurred.

*Farmer* clearly established in 1994 that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 833; *see also id.* (noting lower courts have uniformly held prison officials have a "duty" to "protect prisoners from violence at

the hands of other prisoners"). As the Ninth Circuit explained in *Wilk v. Neven*,

956 F.3d 1143 (9th Cir. 2020), in discussing conduct that occurred in 2013-2014:

> None of the defendants can claim ignorance to a prisoner's right to be protected from violence at the hands of other inmates. That right has been clearly established since the Supreme Court's decision in *Farmer v. Brennan* in 1994. We have recently and explicitly held that it is clearly established that prison officials must "take reasonable measures to mitigate the [known] substantial risk[s]" to a prisoner.

*Id.* at 1150 (citations omitted).

Thus, the right of an inmate to be protected from threats of violence from

other inmates, and the duty of a prison official to take reasonable measures to

mitigate a known substantial risk of serious harm, has been established since at

least 1994. Here, construed in favor of Duvall, the evidence demonstrates that

Nicodemus had actual knowledge of Layman's threat of violence on Duvall, and

took no action to mitigate that threat. Accordingly, Defendant Nicodemus is not

entitled to qualified immunity.

## 3. Request to Dismiss for Failure to Comply with Court Order is Denied

Defendants request, alternatively, that the Court dismiss this action based on

Duvall's failure to comply with the Court's order requiring Duvall to respond to

Defendants' interrogatories. The Court will deny this request.

District courts have inherent power to control their dockets and may impose

sanctions, including dismissal, in the exercise of that discretion. *Hamilton Copper*

*& Steel Corp. v. Primary Steel, Inc*., 898 F.2d 1428, 1429 (9th Cir. 1990). The

Ninth Circuit has advised district courts to consider the following prior to

involuntarily dismissing a case:

> We have repeatedly upheld the imposition of the sanction of dismissal
> for failure to comply with pretrial procedures mandated by local rules
> and court orders. However, because dismissal is such a severe
> remedy, we have allowed its imposition in these circumstances only
> after requiring the district court to weigh several factors: (1) the
> public's interest in expeditious resolution of litigation; (2) the court's
> need to manage its docket; (3) the risk of prejudice to the defendants;
> (4) the public policy favoring disposition of cases on their merits and
> (5) the availability of less drastic sanctions.

*Thompson v. Housing Authority of City of Los Angeles*, 782 F.2d 829, 831-32 (9th

Cir. 1986) (citations omitted); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th

Cir. 1992) (a district court may dismiss an action for failure to comply with any

order of the court).

Here, on March 5, 2020, the Court ordered Duvall to respond to all seven of

Defendants' interrogatories within 20 days. (Dkt. 26.) The Court warned Duvall in

this order: "If Mr. Duvall fails to answer the interrogatories as directed, the

Defendants may file a motion to establish certain facts as true, or seek other

appropriate relief, up to, and including, dismissal of the complaint." (*Id.* at 5.)

Duvall has not responded to Defendants' interrogatories as required by the Court's

order. (*See Defs.' counsel's decl.*, Dkt. 28-2 at 2.)

The Court has considered the *Thompson* factors and does not find dismissal to be an appropriate sanction for Duvall's failure to comply with the Court's order.

Although Duvall did not respond to the interrogatories and therefore violated the Court's order, Defendants have not demonstrated that Duvall's failure to respond resulted in actual prejudice to them. They contend: "Given his sworn testimony that not everything in his complaint was true and correct, and the fact that Defendants were unable to obtain evidence through discovery to test the truth of such allegations, Defendants believe that dismissal of the complaint is warranted." (*Defs.' br.*, Dkt. 28-1 at 10.) However, Defendants deposed Duvall and were able to obtain evidence and test the truth of Duvall's allegations through that deposition. Defendants do not point to any specific information that they were not able to obtain through the deposition that resulted in actual prejudice to them.

Further, as noted previously, although Duvall testified at his deposition that he had assistance writing the complaint, that he did not write the complaint himself, and that he could not be sure everything in his complaint was true and correct, he also testified that to the best of his knowledge, the information in the complaint was true, that he reviewed the complaint after it was written, and that he signed it stating that it was all true.

The lack of specific and actual prejudice to Defendants, combined with the public policy favoring disposition of cases on their merits, and the availability of

less drastic sanctions, convinces the Court that dismissal is not an appropriate sanction. However, by denying dismissal, the Court does not excuse or minimize the significance of Duvall's failure to obey the Court's order. The Court has merely determined that, under the circumstances, dismissal is not an appropriate remedy, and that Defendants may seek other appropriate remedies.

## ORDER

**IT IS ORDERED that** Defendants' Motion for Summary Judgment (Dkt. 28) is GRANTED in part and DENIED in part as follows:

1. The motion is granted to the extent it seeks a grant of summary judgment in favor of Defendants Pryor and Ybanez.

2. The motion is denied to the extent it seeks a grant of summary judgment in favor of Defendant Nicodemus.

3. The motion is denied to the extent it seeks dismissal for failure to comply with a court order.

DATED: November 3, 2020

B. Lynn Winmill
U.S. District Court Judge